FILED IN OPEN COURT
3.4.16

CLERK, U S DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

CARLA WILEY

Case No.    3:16-cr- 34. J. 25JRK
Ct. 1:      18 U.S.C. §§ 1349 & 1343
Forfeiture: 18 U.S.C. § 981(a)(1)(C) &
            28 U.S.C. § 2461(c)

## INFORMATION

The United States charges:

## COUNT ONE
## (CONSPIRACY TO COMMIT WIRE FRAUD)

Between in or about late 2012, through in or about early 2016, in the Middle

District of Florida, and elsewhere,

CARLA WILEY,

the defendant herein, did knowingly and willfully combine, conspire, confederate

and agree with others, known and unknown, to devise and intend to devise a

scheme and artifice to defraud, and for obtaining money by means of materially

false and fraudulent pretenses, representations, and promises, in violation of Title

18, United States Code, Section 1343.

At all times material,

## BACKGROUND

1.    The defendant, CARLA WILEY, was a resident of the Commonwealth of Virginia.

2.    An individual referred to as "Person A" was a public official.

3.    An individual referred to as "Person B" worked for Person A.

4.    On or about April 7, 2011, WILEY submitted Articles of Incorporation (AOI) for a Nonstock Corporation named "One Door For Education – Amy Anderson Scholarship Fund" (hereinafter "One Door For Education") to the State Corporation Commission (SCC) for the Commonwealth of Virginia.

5.    The AOI listed WILEY as the President of One Door For Education.

6.    On or about May 16, 2011, One Door For Education received a Tax Identification Number from the Internal Revenue Service.

7.    On or about September 30, 2012, the SCC automatically terminated One Door For Education's corporate status with the Commonwealth of Virginia for failure to pay annual registration fees.

8.    On or about June 5, 2014, WILEY applied for and obtained reinstatement of One Door For Education's corporate status with the Commonwealth of Virginia.

9.    One Door For Education was not registered in the Commonwealth of Virginia or the State of Florida to solicit or receive charitable contributions.

10.    One Door For Education was not a section 501(c)(3) charitable organization properly registered with the Internal Revenue Service.

## MANNER AND MEANS

1.    It was part of the conspiracy that between in or about late 2012 and in or about early 2016, WILEY, Person A, Person B, and others used Person A's official position to solicit contributions to One Door For Education and to induce individuals and corporate entities to make donations to One Door For Education based on false and fraudulent representations that the funds would be used for charitable purposes.

2.    It was further part of the conspiracy that beginning in or about September 2012 and continuing through in or about late 2015, WILEY, Person A, Person B, and others planned and carried out a series of social and political events that were sponsored by One Door for Education and hosted by Person A or held in Person A's honor.

3.    It was further part of the conspiracy that WILEY, Person A, Person B, and others represented to donors that money raised in connection with these social events would be used to support One Door For Education's purported charitable mission, or to support other charities.

4.    It was further part of the conspiracy that WILEY and Person B coordinated on the design and content of a website for One Door For Education, which promoted and touted One Door For Education's purported charitable and benevolent work on behalf of disadvantaged students.

3

5.      It was further part of the conspiracy that promotional material for One Door For Education, including the entity's website, event invitations, donation requests, and fliers often included a photograph of Person A, or a reference to Person A's position as a public official, as a means to induce individuals and entities to make donations to One Door For Education.

6.      It was further part of the conspiracy that the vast majority of funds donated to One Door For Education were used for the personal or professional benefit of Person A, Person B, WILEY, and others, including:

(a) more than $140,000 in cash withdrawals by WILEY or account transfers from the One Door For Education account to WILEY's personal bank account;

(b) more than $150,000 in disbursements to cover costs associated with social or political events hosted by Person A or held in Person A's honor;

(c) tens of thousands of dollars in ATM cash withdrawals from the bank account of One Door for Education, the bulk of which were made in the city where Person B resides, that correspond to tens of thousands of dollars in cash deposits to Person A's bank accounts;

(d) tens of thousands of dollars in checks made payable to Person B; and

(e) other miscellaneous disbursements for the personal benefit of Person A, Person B, and WILEY.

4

7.      It was further part of the conspiracy that beginning in or about late 2012, and continuing through in or about early 2016, WILEY, Person A, Person B, and others falsely promoted One Door For Education to potential donors as being properly registered as a section 501(c)(3) tax-exempt charitable organization that raised funds to provide scholarships and other educational support for disadvantaged students.

8.      It was further part of the conspiracy that WILEY and Person B provided "gift receipts" to donors falsely representing that One Door For Education was a properly registered section 501(c)(3) tax-exempt charitable organization.

9.      It was further part of the conspiracy that WILEY gave Person B the One Door For Education debit card and checkbook, which Person B used to write checks that Person B signed in WILEY's name.

10.     It was further part of the conspiracy that Person A, Person B, WILEY, and others caused donors in the Middle District of Florida and elsewhere to transmit donation checks to WILEY and Person B by means of the U.S. Postal Service or other commercial carrier.

11.     It was further part of the conspiracy that Person B and WILEY communicated on numerous occasions, by cellular phone and through the use of email communication, as well as other interstate wire communications, regarding One Door For Education finances, including discussions of the entity's bank account balance.

12.     It was further part of the conspiracy that Person A, Person B, and

WILEY omitted informing One Door For Education donors that the vast majority of funds donated to One Door For Education were not used in support of One Door For Education's purported charitable purpose.

13. It was further part of the conspiracy that WILEY, Person A, Person B, and others performed acts and made statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE

1. The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of a violation of Title 18, United States Code, Sections 1349 and/or 1343, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third

party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A. LEE BENTLEY, III
United States Attorney
Middle District of Florida

By:    _____
A. Tysen Duva
Assistant United States Attorney

By:    _____
Michael J. Coolican
Assistant United States Attorney

By:    _____
Roger B. Handberg, III
Assistant United States Attorney
Chief, Criminal Division (North)


RAYMOND HULSER
Public Integrity Section

By:    _____
Eric G. Olshan
Deputy Chief

7